| | | |
|---|---|---|
| **MONICA WILKINS O/B/O K.G.W.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 11-2469** |
| **MICHAEL J. ASTRUE,** | * | **SECTION: "N"(5)** |
| **COMMISSIONER OF SOCIAL** | | |
| **SECURITY ADMINISTRATION** | | |

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 14, 15, 17).

On October 5, 2009, Monica Wilkins, mother of the plaintiff-in-interest herein, K.G.W., filed an application for SSI benefits on behalf of the minor child, alleging disability as of July 1, 2007. (Tr. pp. 108-110). In a Child's Disability Report that appears in the record the conditions resulting in plaintiff's disability were identified as asthma and breathing problems. (Tr.

pp. 126-133). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on October 27, 2009. (Tr. pp 50-52). Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on October 5, 2010 at which plaintiff's mother, with plaintiff's counsel in attendance, appeared and testified. (Tr. pp. 70-72, 31-43). On November 10, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 10-26). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-5). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, plaintiff frames the sole issue for judicial review as follows:

> 1. [t]he ALJ rejected the findings of the treating physician for lack of supporting evidence, which was subsequently entered into the record and considered by the Appeals Council.

> (Rec. doc. 14-2, p. 2)

Relevant to the resolution of the foregoing issue are the following findings that were made by the ALJ:

1.[t]he claimant was born on May 16, 2007. Therefore, he was an older infant on October 5, 2009, the date application was filed, and is currently an older infant (20 CFR 416.926a(g)(2)).

2.[t]he claimant has not engaged in substantial gainful activity since October 5, 2009, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3.[t]he claimant has the following severe impairment: asthma (20 CFR 416.924(c)). This is a severe impairment within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and the Regulations.

4. [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926.

5. [t]he claimant does not an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.924(a)).

6. [t]he claimant has not been disabled, as defined in the Social Security Act, since October 5, 2009, the date the application was filed (20 CFR 416.924(a)).

(Tr. pp. 16, 23).


Judicial review of the commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they

are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 590, 592 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that he is disabled within the meaning of the Social Security Act. Fraga, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner utilizes the three-step sequential analysis set forth in 20 C.F.R. §416.924, as follows:

1. determine whether the child engaged in substantial gainful activity during the relevant time frame and, if not;

4

2.   determine whether the child has a medically determinable
     severe impairment and, if so;

3.   determine whether the impairment meets, medically equals,
     or is functionally equal to an impairment set forth in
     the Listing of Impairments, Appendix 1, Subpart P, Part
     404.

> See _Verrett v. Commissioner of_
> _Social Security_, 2001 WL 179922 at
> *1 n.7 (E.D. La. Feb. 20, 2001).

In the case at bar, the ALJ first found that plaintiff had not engaged in substantial gainful activity. (Tr. p. 16). Proceeding to step two of the three-step sequential analysis, the ALJ then found that plaintiff suffered from a severe impairment in the form of asthma. (_Id._) At step three, however, the ALJ concluded that plaintiff's asthma, while severe, did not meet, medically equal, or functionally equal the criteria of one of the impairments set forth in the Listing of Impairments, including Listing 103.03(C)(2), the Listing that plaintiff alleges that he meets. (Tr. pp. 16-23). That Listing provides, in pertinent part, that a child will presumptively be considered to be disabled if he suffers from:

> _Asthma_. With:
>
> *   *   *   *   *
>
> C.   Persistent low-grade wheezing between
> acute attacks or absence of extended symptom-
> free periods requiring daytime and nocturnal
> use of sympathomimetic bronchodilators with
> one of the following:

    \*   \*   \*   \*   \*

> 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;...

In the course of the administrative proceedings below, Dr. Eduardo Hernandez, who was purportedly one of plaintiff's treating physicians, completed and submitted a form letter addressed "To Whom It May Concern" which contained five questions susceptible to "yes" or "no" answers that asked whether plaintiff had certain symptoms or signs that were associated with bronchial asthma. (Tr. p. 199). On that form letter, the doctor checked off the appropriate blanks to indicate that plaintiff had an "[a]bsence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators," experienced "[p]ersistent prolonged expiration (intermittent)", and had been placed on "[s]hort courses of corticosteroids that average more than five days per month for at least three months during a 12-month period." (<u>Id</u>.). In a section of the form soliciting additional remarks, Dr. Hernandez wrote that "[f]rom 4/2/09 till 6/29/10 seen 12 times; No Show/Reschedule 20 times. See Attached." (<u>Id</u>.). The copy of the form letter that appears in the administrative record, however, contains no attachments. (<u>Id</u>.).

In his written decision of November 10, 2010, the ALJ provided the following rationale as to why Listing 103.03(C)(2) was not satisfied:

> Listing 103.03(C)(2) requires absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period. <u>The assessment executed by Dr. Eduardo Hernandez indicates the claimant meets the requirements for Listing 103.03(C)(2)</u>[<u>Ex 6F</u>]. <u>However, the doctor's opinion is without substantial support such as office visit notes, chest x-rays, etc., which obviously renders it less persuasive. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion</u>. Further, the other medical evidence of record does not support the claimant meets the Listing. Alternatively, the representative argues that the claimant meets Listing 103.03(B). However, the medical evidence does not support the assertion.
>
> It is clear that the claimant has trouble with asthma and has had since infancy. Although the claimant has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Nevertheless, the claimant's use of medications does not suggest the presence of an impairment that is more limiting than found in this decision. This

severe impairment does not meet, medically equal or functionally equal the listings.

In light of all of the claimant's activities of daily living and response to medication, the undersigned finds that the allegations regarding the intensity, duration, and limiting effects of claimant's severe impairments and symptoms are not fully credible. The claimant's mother reports daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Moreover, she actually describes relatively normal physical activities with very little limitation.

As for the opinion evidence, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.' The undersigned accords great weight to those opinions because they are consistent with the medical evidence of record.

(Tr. p.18)(emphasis added).

Attached to the ALJ's decision was a list of exhibits that were considered by him before he rendered his written decision. (Tr. pp. 24-26). Absent from that list were some sixty pages of additional records from the Children's International Medical Group where Dr. Hernandez practiced, which records later became part of the administrative proceedings as Exhibit 9F. (Tr. pp. 379-439). Based upon a review of the record, it appears that those treatment notes, which cover the time period from July 29, 2009 to July 30, 2010, were scanned on September 29, 2010 but for

8

reasons that are not readily obvious were apparently not made available to the ALJ prior to the date of his decision on November 10, 2010. That omission was brought to the attention of the AC by plaintiff's counsel by correspondence dated January 6, 2011. (Tr. pp. 155-157). On August 10, 2011, the AC denied plaintiff's request for review of the ALJ's decision. (Tr. pp. 1-5). In doing so, the AC specifically indicated that it had received and considered the additional sixty pages of exhibits that appear in the record as Exhibit 9F in addition to counsel's post-decision brief. (Id.).

Plaintiff now alleges that the ALJ improperly rejected the opinions of Dr. Hernandez for lack of supporting evidence, which evidence was subsequently entered into the record as Exhibit 9F and was duly considered by the AC. Plaintiff argues that a cursory review of Exhibit 9F demonstrates reference to the use of Pulmicort and Xopenex on various occasions. Plaintiff further argues that because the ALJ's basis for rejecting Dr. Hernandez' August 30, 2010 findings was the absence of the very records that were before the Commissioner at the AC level, sufficient evidence is lacking to support the ALJ's statement that Dr. Hernandez' opinion was without substantial support such as office visit notes. Citing <u>Higginbotham v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005), plaintiff thus moves that his case be remanded to the Commissioner

to allow the ALJ to consider the sixty pages of records that were apparently not provided to him but were subsequently considered by the AC.

In addressing plaintiff's challenge to the Commissioner's decision, the Court initially notes plaintiff's apparent concession that the sixty pages of records from the Children's International Medical Group had not been made available to the ALJ prior to the date that he rendered his decision. Thus, the ALJ's statement that the opinions set forth in the "To Whom It May Concern" letter executed by Dr. Hernandez were unsupported by office visit notes was correct at the time that it was written. Even if that were not the case, the form letter was unaccompanied by any contemporaneously-recorded, medically acceptable findings and is thus entitled to little weight on that basis alone. Warncke v. Harris, 619 F.2d 412, 417 (5th Cir. 1980). The use of such checklist forms, particularly when weighed against the objective evidence of record, is generally viewed with disfavor. See, e.g., Holstrom v. Massanari, 270 F.3d 715, 720-21 (8th Cir. 2001); Cantrell v. Apfel, 231 F.3d 1104, 1107, (8th Cir. 2000); Bellanger v. Astrue, 2012 WL 4170597 at *1 (E.D. La. Sept. 17, 2012).

Plaintiff's cite to Higginbotham, supra, provides little support for the remand that he seeks. In that case, the Fifth Circuit remanded a Social Security proceeding back to the district

court because the district court had declined to consider additional evidence that had not been presented to the ALJ but had been submitted for the first time to the AC. <u>Higginbotham</u>, 405 F.3d at 334-35. <u>Higginbotham</u> does not stand for the proposition that a remand to the Commissioner for consideration of the additional evidence by the ALJ in such situations is warranted. This is made clear based on a review of the Fifth Circuit's decision on appeal following its remand where it noted that such an approach would eviscerate the "substantial evidence" standard and may encourage litigants to withhold some of their evidence from the ALJ in hopes of seeking reconsideration if review at that level is initially unsuccessful. <u>Higginbotham v. Barnhart</u>, 163 Fed. Appx. 279, 281-82 (5th Cir. 2006)("<u>Higginbotham II</u>").  Instead, "[i]f additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." <u>Id</u>. at 281 (internal citations omitted). The question thus becomes whether the sixty pages of records from the Children's International Medical Group support plaintiff's allegation that his condition satisfied the criteria of Listing 103.03(C)(2).

Having reviewed the records at issue, the Court questions whether Dr. Hernandez can properly be characterized as a treating physician of plaintiff. On the form letter that he submitted, Dr. Hernandez indicated that plaintiff had been seen twelve times between April 2, 2009 and June 29, 2010 but he does not specifically state that he was the one who had evaluated plaintiff as opposed to some other practitioner affiliated with his group. The medical records document fifteen occasions on which plaintiff was seen at the Children's International Medical Group between August 10, 2009 and July 30, 2010. The contemporaneous treatment notes from all of those visits were signed by Nurse Practitioner ("NP") Kristi Moody with the sole exception being November 13, 2009 on which a second treatment note was signed by someone whose last name is "Marshall" or "Marshallson." (Tr. pp. 415, 417). In fact, from the sixty pages of records the Court can glean but only one mention of Dr. Hernandez which appears on billing records referencing a preventive medicine evaluation on November 13, 2009. (Tr. p. 382). However, as noted, neither of the treatment notes from that date were signed by Dr. Hernandez.

The foregoing concerns notwithstanding, the Court will nevertheless turn to the records in question to determine whether they establish that plaintiff's condition satisfied the criteria of Listing 103.03(C)(2). On July 29, 2009, plaintiff was administered

a periodic screening by NP Moody. An examination of the lungs was within normal limits and the diagnosis was asthma, controlled with Xopenex and Pulmicort, and anemia. (Tr. pp. 438, 162). Plaintiff returned to NP Moody for vaccinations on August 10, 2009 and again his lungs were clear. (Tr. pp. 430, 423, 161). On August 16, 2009, plaintiff was admitted to the Lakeview Regional Medical Center with a fever and respiratory distress with a dry cough and wheezing that had failed to resolve with use of a Xopenex nebulizer. Plaintiff had, however, exhausted his supply of Pulmicort. Upon physical examination, plaintiff's lungs were clear with no wheezes or rubs. The diagnosis was left otitis media, respiratory distress, and dehydration. By the time of plaintiff's discharge on August 18, 2009, those conditions were resolving and there was no wheezes, crackles, or retractions. (Tr. pp. 432-437).

Plaintiff was seen again by NP Moody for a check-up on October 1, 2009 and his lungs were clear at that time. The diagnosis was controlled asthma. (Tr. pp. 429, 160). On October 5 or 6, 2009, plaintiff received treatment at the North Oaks Medical Center for a chin laceration he had suffered at daycare. (Tr. p. 428). Plaintiff was next seen at the Lallie Kemp Emergency Room on November 6, 2009 after being involved in a motor vehicle accident. (Tr. p. 421). Further follow-up was performed by NP Moody on November 12, 2009 and no problems were noted and

plaintiff's lungs were clear. (Tr. p. 424). As noted earlier, plaintiff was seen by RN Moody and another practitioner from Children's International on November 13, 2009 who documented wheezing, diagnosed asthma, and adjusted plaintiff's medications. (Tr. pp. 415-417). On November 20, 2009, NP Moody referred plaintiff to Lallie Kemp for evaluation, testing, and treatment in connection with the previous motor vehicle accident. (Tr. p. 414).

Plaintiff returned to NP Moody on December 10, 2009 for a respiratory check and to obtain additional Xopenex. A cough and congestion were noted along with wheezing. The diagnosis was asthma and medications were prescribed, including Mucinex. (Tr. p. 413). On December 22, 2009, plaintiff was seen again by NP Moody for a split lip. His lungs were clear at that time and his asthma was declared to be under control. (Tr. P. 412). Plaintiff's lungs were again clear when he was next seen by NP Moody on December 30, 2009 and he was instructed to fill a prescription for steroids if his cough persisted despite taking Xopenex and Pulmicort. (Tr. p. 409). At another follow-up appointment on January 14, 2010, plaintiff's lungs were clear and his asthma was characterized as under control and greatly improved. (Tr. p. 408).

On February 8, 2010, plaintiff was treated for shortness of breath at the North Oaks Emergency Room. The diagnosis was asthma with status asthmaticus. (Tr. pp. 405-406). Plaintiff was

next seen at Lallie Kemp for a cough on March 2, 2010 and he was noted to have wheezing despite having taken Xopenex earlier in the day. The diagnosis was a bronchspasm. (Tr. pp. 400-404). On March 24, 2010, NP Moody formally referred plaintiff to Lallie Kemp for further evaluation, testing, and treatment of his cough. (Tr. p. 399). Plaintiff then underwent a speech evaluation at North Oaks Rehabilitation Services on May 10, 2010 and no functional limitations were noted. (Tr. pp. 395-396).

Plaintiff was next seen by NP Moody on June 9, 2010 for diarrhea for the previous two days. Plaintiff's lungs were clear and the diagnosis was a viral illness. (Tr. p. 392). Two days later, plaintiff presented to NP Moody with a bronchospastic cough and an inability to catch his breath. Audible wheezing was observed. The diagnosis was acute asthma and bronchospasm and plaintiff was transported to the North Oaks Emergency Room for further treatment. (Tr. p. 389). By June 14, 2010, plaintiff's lungs were once again clear and the diagnosis was asthma and an upper respiratory infection. (Tr. p. 388). Plaintiff's lungs remained clear on June 16, 2010 and his condition was described as "much improved." (Tr. p. 387). On July 19, 2010, NP Moody treated plaintiff for a bump to the right side of the forehead following a fall at daycare. Plaintiff's lungs remained clear and the diagnosis was a contusion to the forehead. (Tr. p. 381).

Plaintiff would see NP Moody again on July 30, 2010 for complaints of coughing spells several days earlier that improved with the use of Xopenex.  There was occasional expiratory wheezing in all lung fields and the diagnosis was an acute exacerbation of asthma.  (Tr. p. 380).

Having reviewed the additional sixty pages of records from Children's International in their entirety, they simply fail to establish persistent low grade wheezing between acute attacks, or an absence of extended symptom-free periods, requiring daytime and nocturnal use of bronchodilators with short courses of corticorsteroids that averaged more than five days per month for at least three months during a twelve-moth period as Listing 103.03(C)(2) requires.  As the claimant, the burden was upon plaintiff at all times to prove that his condition met or equaled an impairment set forth in the Listing of Impairments.  Shattles v. Astrue, 2010 WL 3801307 at *5 (W.D. La. Aug 23, 2010), adopted with modifications, 2010 WL 3883888 (W.D. La. Sept. 27, 2010)(citing Sullivan v. Zebly, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990)). If plaintiff was unable to produce sufficient medical evidence establishing Listing-level severity, the ALJ was empowered to make a decision based on the information that was available.  Joiner v. Astrue, 2011 WL 4853589 at *6-7 (E.D. La. Sept. 6, 2011), adopted, 2011 WL 4888870 (E.D. La. Oct. 12, 2011).  Because he had not been

provided the additional sixty pages of records, the statements that the ALJ made in his decision about the lack of supporting documentation from Dr. Hernandez were correct at the time that they were written. The records were subsequently provided to the AC which considered them in adjudicating plaintiff's request for review, thus properly considering the records under 20 C.F.R. §416.924 as the term "we" that is used throughout the Regulations refers to the Social Security Administration as a whole of which the AC is an integral part. 20 C.F.R. §416.902. The Court now having had the occasion to review the additional records as Higginbotham II directs, Listing-level severity is not established here.

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that

such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n,</u> 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).

New Orleans, Louisiana, this 26th day of  November , 2012 .


ALMA L. CHASEZ
United States Magistrate Judge